UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Lindell Management LLC Litigation | Case No. 23-cv-1433 (JRT/DJF)<br><br>**ROBERT ZEIDMAN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONFIM ARBITRATION AWARD** |

**I.     INTRODUCTION**

Robert Zeidman asks the Court to grant this motion to confirm the arbitration award unanimously decided by a three-person panel in his favor on April 19, 2023 and, to deny Lindell Management LLC's ("Lindell") petition to vacate that same award. (Case No. 23-cv-01759, ECF No. 1-1). The Federal Arbitration Act ("FAA"), which governs the issues in this motion, provides extremely limited grounds for a court to vacate an arbitration award. Here, Lindell's petition rests on the lone assertion that the arbitration panel "exceeded its powers" ostensibly under 9 U.S.C. §10 (a)(4). (*Id*. at ¶11.) Nothing in the operative arbitration agreement, the facts of this case or the arbitrators' award supports any notion that the arbitrators exceeded the very broad authority granted to them in the arbitration agreement. Lindell simply seeks to delay the inevitable.

Mr. Zeidman asks that this court deny Lindell's petition to vacate, confirm the underlying arbitration award and order Lindell to satisfy the judgment in 15 days, including post-judgment interest.

1

## II. PROCEDURAL BACKGROUND

On August 10, 2021, Mr. Zeidman traveled to Sioux Falls, South Dakota, to participate in the Prove Mike Wrong Challenge ("the Challenge") at the Cyber Symposium. (Demand for Arbitration attached hereto Exhibit A). The Cyber Symposium, which took place on August 10- 12, 2021, was sponsored and hosted by Michael J. Lindell, the registered agent and manager of Lindell Management LLC. (*Id*.) The rules of the Challenge were set forth in the contract that all participants had to sign to enter the Challenge ("the Rules"). (ECF No. 2-1). Under the Rules, participants had to "prove that the data Lindell provides, and represents reflects information from the November 2020 election, unequivocally does NOT reflect information related to the November 2020 election." (*Id*. ¶1 (emphasis in the original)). The Rules state that the winner of the Challenge was to receive $5 million. (*Id.*). The Rules also contain a provision wherein the parties were required to submit any and all claims related to the Challenge to final, binding arbitration under the Rules of the American Arbitration Association:

> **ARBITRATION.** YOU AND LINDELL AGREE THAT IN THE EVENT OF ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT,TORT, OR OTHERWISE) ARISING OUT OF, RELATING TO, OR CONNECTED IN ANY WAY WITH THE CHALLENGE, OR THE BREACH, ENFORCEMENT, INTERPRETATION, OR VALIDITY OF THESE TERMS & CONDITIONS ("CLAIM"), SUCH CLAIM WILL BE RESOLVED EXCLUSIVELY BY FINAL AND BINDING ARBITRATION. ARBITRATION IS MORE INFORMAL THAN A LAWSUIT IN COURT AND USES A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION IS SUBJECT TO VERY LIMITED REVIEW BY COURTS, BUT ARBITRATORS CAN AWARD THE SAME DAMAGES AND RELIEF THAT A COURT CAN AWARD. THE ARBITRATION WILL BE CONDUCTED UNDER THE

THEN CURRENT RULES OF THE AAA AND CONDUCTED IN ENGLISH. THE AAA RULES ARE AVAILABLE ONLINE AT WWW.ADR.ORG OR BY CALLING THE AAA AT 1-800-778-7879. THE LOCATION OF ANY ARBITRATION SHALL BE MINNEAPOLIS, MINNESOTA.

(*Id.* ¶9).

On November 3, 2021, Robert Zeidman filed an arbitration demand against Lindell Management LLC alleging that Lindell breached the contract between the parties and that Lindell violated the Minnesota Consumer Fraud Act. (Exhibit A).

The arbitration panel ("the Panel") was comprised of three individuals. One of the arbitrators was chosen by Lindell, one by Mr. Zeidman and the third was proposed by Lindell and accepted by Mr. Zeidman. (ECF No. 17-2, ¶ 2).

An arbitration hearing was held before the Panel for three days in Minneapolis, Minnesota, from January 17-19, 2023. (ECF No. 1, ¶7). The parties submitted post-hearing briefing and closing arguments were held on March 18, 2023. (*Id.*) On April 19, 2023, the Panel issued a 23-page, unanimous decision finding that Mr. Zeidman had fully performed under the contract by proving that the data Lindell provided, and represented reflected information from the November 2020 election, unequivocally did not reflect November 2020 election data. (ECF No. 2-2 at 23). They held that failure to pay Mr. Zeidman the $5 million prize money was a breach of the contract, entitling him to recover. (*Id.*). They found the claim under the Minnesota Consumer Fraud Act to be moot since Mr. Zeidman had prevailed on his breach of contract claim. (*Id.*).

The Award entitles Mr. Zeidman to judgment against Lindell Management

LLC in the amount of $5,000,000 to be paid within 30 days of the date of the award, which was May 19, 2023. (*Id*.).

On May 18, 2023, Lindell filed a petition to vacate the arbitration award with the District Court of Hennepin County, Minnesota. (Case No. 23-cv-01759, ECF No. 1-1). Before the petition to vacate had been docketed or served, Mr. Zeidman filed a petition to confirm the award in federal court. (ECF No.1). He then removed Lindell's petition to vacate to federal court and the competing petitions were consolidated here. (Case No. 23-cv-01759, ECF No. 1; ECF No.16).

Following the consolidation, the parties filed a Rule 26(f) report in which they agreed to waive all discovery and have the case decided on dispositive motions. (ECF No.19). The court entered a pre-trial scheduling order on July 25, 2023. (ECF No.20) The parties stipulated to the facts in the case, namely the transcripts and exhibits from the underlying arbitration. (ECF No.21).

### III.   STANDARD OF REVIEW

#### A. The Federal Arbitration Act governs the arbitration agreement.

The Federal Arbitration Act governs the construction of an arbitration agreement unless the agreement expressly provides that state law governs. *ING Fin. Partners v. Johansen*, 446 F.3d 777, 779 (8th Cir. 2006). To apply state law to the construction of an arbitration agreement, the parties must state expressly in the agreement that state law will apply to the agreement itself and that the FAA will be precluded. *Dominium Austin Partners, LLC v. Emerson*, 248 F. 3d 720, 729 n.9

4

(8th Cir. 2001) (noting that a generic choice-of-law clause does not support an inference that the parties intended state law to apply to construction of the arbitration agreement). While the Rules, the operative contract between the parties, does contain a generic choice-of-law provision it does not specifically invoke state law related to construction of the arbitration agreement. (ECF No. 2-1, ¶8). Thus, the FAA applies.

### B. Under the FAA, a court's scope of review of an arbitration award is extremely narrow.

A court's review of an arbitration award under the FAA is extremely limited and the arbitrators' award is given extraordinary deference. *Bhd. of Maint. of Way Employees v. Terminal R.R. Ass'n,* 307 F.3d 737, 739 (8th Cir. 2002) (noting that a court's "scope of review of the arbitration award itself is among the narrowest known to the law."); *see also Stark v Sandberg, Phoenix & von Gontard*, 381 F.3d 793, 798 (8th Cir. 2004) (explaining that an arbitration award must be confirmed even if a court is convinced that the arbitrator committed serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within its authority.") (internal citations omitted). Lindell even includes this contention in the Rules themselves stating that "ARBITRATION IS SUBJECT TO VERY LIMITED REVIEW BY THE COURTS, BUT ARBITRATORS CAN AWARD THE SAME DAMAGES AND RELIEF THAT A COURT CAN AWARD." (ECF No. 2-1, ¶9 (emphasis in original)).

The United States Supreme Court, in *Hall Street Associates, L.L.C. v.*

*Mattel, Inc.*, clarified the extent of a court's ability to expand judicial review beyond the FAA, holding that such expansion was clearly prohibited:

> [E]xpanding the detailed categories [of §10 of the FAA] would rub too much against the grain of the § 9 language, where provision for judicial confirmation carries no hint of flexibility. On application for an order confirming the arbitration award, the court "must grant" the order "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." There is nothing malleable about "must grant," which unequivocally tells courts to grant confirmation in all cases, except when one of the "prescribed" exceptions applies.

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587, 128 S. Ct. 1396, 1405, 170 L. Ed. 2d 254 (2008). Thus, under the FAA, a court must confirm an arbitration award, except in four narrow circumstances explicitly provided for in the FAA:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §§9-10(a). In the absence of one of these grounds, the award must be confirmed. *Med. Shoppe Int'l, Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 488 (8th

Cir. 2010) *citing Hall St. Assoc., LLC.*, 552 U.S. 587 (2008). This court's essential inquiry is: "(1) Did the parties agree to arbitrate? and (2) Did the arbitrator have the power to make the award that he made?" *Trailmobile Trailer, LLC v. International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFO-CIO*, 223 F.3d 744 (8thCir. 2000). Here, the answer to both of these questions is very clearly "yes" and the court should therefore confirm the arbitration award.

IV.   **ARGUMENT**

  A. **Nothing in this case warrants vacating the arbitration award.**

Although Lindell has filed a petition to vacate the Award, none of the limited exceptions to confirmation of the Award under the FAA exists in this case. First, there is no evidence nor allegation by Lindell that the Award was procured by corruption, fraud, or undue means as contemplated in §10 (a)(1). Similarly, there is no evidence nor allegation by Lindell that there was evident partiality or corruption on the part of the Panel as contemplated in §10 (a)(2). And, likewise, there is no evidence nor allegation by Lindell that the Panel refused to postpone the hearing, refused to hear any evidence that was relevant to the claims in the case or was guilty of any misbehavior that prejudiced Lindell's rights as contemplated in §10 (a)(3).

The only ground on which Lindell bases his petition to vacate is that the Panel "exceeded its powers," ostensibly under §10 (a)(4) (Case No. 23-cv-01759, ECF No. 1-1, ¶11). While Lindell has set forth this claim in the barest terms in his

7

petition, nothing in the Rules, the factual record or the Award in any way supports this contention.

**B. The arbitration panel acted well within the broad authority provided in the Rules.**

To determine if an arbitrator or, in this case, a panel of three arbitrators, exceeded their powers, the court must look to the arbitrators' authority as provided in the arbitration agreement. *Prime Therapeutics LLC v. Omnicare, Inc.*, 555 F. Supp. 2d 993, 999-1000 (D. Minn. 2008). When making this determination, the court must "broadly construe the arbitration agreement with all doubts being resolved in favor of the arbitrator's authority." *United Food & Com. Workers, AFL-CIO, CLC, Loc. No. 88 v. Shop "N Save Warehouse Foods, Inc.*, 113 F.3d 893, 895 (8th Cir. 1997) (internal citations omitted).

In this case, the mandatory arbitration provision in the Rules, drafted by Lindell and included in all capital letters, provides the very broadest authority to the arbitrators to resolve any and all issues related to the Rules and the Challenge. The arbitration clause covers "any claim, dispute, or controversy (whether in contract, tort, or otherwise) arising out of, relating to, or connected in any way with the Challenge, or the breach, enforcement, interpretation or validity of these terms and conditions ("claim")," and further states that "such claim will be resolved exclusively by final and binding arbitration." (ECF No. 2-1). The authority given to the Panel in the arbitration agreement could not have been broader. It essentially covers any claim in any way connected to the Challenge or

the contract and, in any case, certainly covers the issues addressed by the Panel in this case.

In the Award, the Panel described their task as having to decide three "narrow" issues. (ECF No. 2-2 at 10). They had to decide (1) whether Mr. Zeidman won the Challenge such that Lindell's failure to pay the prize breached the Rules (2) whether the Rules were unconscionable and (3) whether Lindell violated the Minnesota Consumer Fraud Act by creating the Challenge knowing it would not declare a winner. *Id*. These three issues fall well within the broad authority granted in the arbitration provision in the Rules and, in deciding on these issues, the Panel was doing exactly what the Rules gave them the authority to do. There is simply no legitimate argument that the Panel exceeded its powers as provided by the Rules.

!

## V.  CONCLUSION

In this case, the Panel indisputably acted within the scope of the authority provided for in the Rules. Yet, Mr. Zeidman has had to continue to spend time and resources to pursue the award, which is entirely antithetical to the idea behind arbitration as an efficient means of resolving disputes. Arbitration is designed "primarily to avoid the complex, time-consuming and costly alternative of litigation." *Hoffman v. Cargill Inc*., 236 F.3d 458, 462 (8th Cir. 2001). Mr. Zeidman now asks that this court apply the "restrictive standard necessary to preserve these benefits and prevent arbitration from becoming a 'preliminary step

9

to judicial resolution." Specifically, Mr. Zeidman asks that the court enter an order confirming the April 19, 2023 arbitration award, denying Lindell Management LLC's petition to vacate and ordering payment on the judgment and post-judgment interest within 15 days of the court's order.

DATED: August 4, 2023

                                      **BAILEY & GLASSER LLP**

                                      By: */s/ Cary Joshi*
                                          Brian A. Glasser (admitted *pro hac vice*)
                                          Cary Joshi (admitted *pro hac vice*)
                                          1055 Thomas Jefferson St, Suite 540
                                          Washington, DC 20007
                                          T: (202) 463-2101
                                          F: (202) 463-2103
                                          bglasser@baileyglasser.com
                                          cjoshi@baileyglasser.com

                                          David E. Schlesinger (MN# 0387009)
                                          4700 IDS Center
                                          80 South Eighth Street
                                          Minneapolis, MN 55402
                                          T: 612-256-3277
                                          F: 612-338-4878
                                          schlesinger@nka.com

                                          *Attorneys for Plaintiff*