UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Lindell Management LLC Litigation | Case No. 0:23-cv-01433-JRT-DJF<br><br>**LINDELL MANAGEMENT'S MEMORANDUM OF LAW IN OPPOSITION TO ROBERT ZEIDMAN'S MOTION TO CONFIRM ARBITRATION AWARD** |

## INTRODUCTION

Lindell Management, LLC ("Lindell Management") asks the Court to deny Robert Zeidman's Motion to Confirm Arbitration Award as the arbitration panel exceeded its power in issuing the award. Additionally, Zeidman's Motion is premature while Lindell Management's Petition to Vacate is still pending.[1] Because of that procedural background, and because Zeidman provides only a skeletal argument in favor of his Motion, Lindell Management will outline its response herein, and provide a fuller argument in support of its own Motion to Vacate, which will be filed within the timelines Ordered by the Court.

---

[1] Zeidman has not obtained a hearing date for his Motion. Consistent with the Court's Consolidation Order, Lindell Management will be filing its own Motion to Vacate the arbitration award shortly, and prior to the Court's deadline for filing (October 25, 2023). Lindell Management respectfully requests that the Court set both Petitions on for hearing at the same time and date.

## PROCEDURAL BACKGROUND

On April 19, 2023, an American Arbitration Association panel of arbitrators issued an award against Lindell Management and in favor of Zeidman. (*See* Petition for Order Confirming Arbitration Award ¶ 8, ECF. No. 1.) On May 18, 2023, Lindell Management filed an action in Hennepin County District Court to vacate the arbitration award. (Petition ¶ 12, ECF. No. 1.) The following day, Zeidman filed this action to confirm the same award. (*Id.*) Zeidman's counsel acknowledged in his Petition action that she was aware Lindell Management had already filed the state court action. (*Id.*)

On June 12, 2023, Zeidman removed the state court action to this Court (which then became Case No. 23-CV-01759). (Order ECF No. 16.) As noted, the Court subsequently consolidated the cases as "*In re: Lindell Management LLC Litigation*." (*Id.*) The Parties were given until October 25, 2023, to submit their Motions regarding the arbitration award. (Pretrial Scheduling Order at 6, ECF No. 20.) On August 4, 2023, Zeidman filed the current Motion to Confirm. (ECF Nos. 22-24.) Lindell Management files this Memorandum in opposition to that Motion.

## FACTUAL BACKGROUND

The "Prove Mike Wrong" Challenge was conducted in Sioux Falls, South Dakota on August 10-12, 2021. (Zeidman Memorandum at 2, ECF No. 24.) The contest involved a series of computer data files which were shown to the contestants. *Id.* The contestants were required to prove that the data files they were given were *not* "related to" the 2020 election. *Id.* More specifically, the Rules (which were signed by Zeidman) read as follows:

2

> [P]articipants will participate in a challenge to prove that the data Lindell provides, and represents reflects information from the November 2020 election, unequivocally does NOT REFLECT INFORMATION RELATED TO THE November 2020 election. . . .
>
> **YOU MUST READ AND SIGN THIS FORM AND RETURN IT TO THE FRONT DESK TO PARTICIPATE IN THE CHALLENGE**
>
> \* \* \*
>
> Participation in the Contest constitutes Entrants full and unconditional agreement to an acceptance of these Official Rules and the decisions of Sponsor, which are final and binding. Winning a prize is contingent upon fulfilling all requirements set forth herein.
>
> \* \* \*
>
> Participants must submit all of their evidence in writing to a three member panel selected by Lindell who will determine whether the submission proves to a 100% degree of certainty that the data shown at the Symposium is not reflective of November 2020 election data
>
> \* \* \*
>
> In the event there is an alleged or actual ambiguity, discrepancy or inconsistency between disclosures or other statements contained in any Contest-related materials and/or these Official Rules (including any alleged discrepancy or inconsistency in these Official Rules) it will be resolved in Lindell's sole discretion.

(Schlesinger Declaration Ex. A., ECF No. 2, emphasis in original.) The only possible reading of the Rules was that contestants had to prove "to a 100% degree of certainty" that the data both are not somehow "related to" the 2020 election, **and** that the data are "not reflective of November 2020 election data." Neither "reflect" nor "relate to," as used above, was defined; the words must therefore necessarily be given their normal English meanings. In essence, the contestants were asked to prove a negative – that the data files were both "100%" and "unequivocally" *not* reflective of, the 2020 election, nor did they even "*reflect information related to*" the 2020 election. This is obviously an exceedingly high bar. Zeidman presented evidence that the information provided was not in "PCAP"

3

format (internet packet capture files), and thus, in his opinion, could not "reflect" information about the election. (*Id*. Ex. B. at 9, ECF No. 2.) He further testified that he believed the Rules had to be read "reasonably," and that the fact that the data admittedly *did* contain information which "referred" or "related to[2]" the election was not sufficient. (Arbitration Tr. at 94:1 – 15, 114:22 – 121:22.) On the other hand, Zeidman admitted that the data contained names of candidates, polling locations, internet addresses of polling locations, etc. This was the dispute that was submitted to the arbitration panel.

## STANDARD OF REVIEW

A court's review of an arbitration award is limited, and the award is entitled to deference. *Prime Therapeutics LLC v. Omnicare, Inc.,* 555 F. Supp. 2d 993, 996 (D. Minn. 2008)(quoting *Stark v. Sandberg,* 381 F.35d 797, 798 (8th Cir. 2004). The Federal Arbitration Act notes that a court must confirm an arbitration award except in, *inter alia*, the following circumstances:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

---

[2] Mr. Zeidman testified, "I found no PCAP data, but there could potentially have been other data related to the election." (Arbitration Tr. at 135:23-25.)

4

9 U.S.C. §10(a). In this case the Rules to be applied by the arbitration panel were very specific. The arbitration panel nevertheless reached a decision which is practically and logically impossible, thus effectively reversing the burden of proof in the case. The panel further created new definitions and exceptions in pursuit of its own ideas of "justice." In doing so, the panel exceeded its powers. Thus, the requirements of subsection 4, above, are met. In his Motion, Zeidman relies solely on the deferential standard of review, without adding any substantive argument. In fact, Zeidman simply states that the standard is one of deference, that the arbitration panel reached a decision, and that this Court should therefore defer. (*See* Zeidman Memorandum at 7.) While the standard is deferential, this Court is not a rubber stamp, and should consider the evidence before reaching a decision.

## ARGUMENT

**1. The Arbitration Panel Exceeded its Power and the Award Should be Vacated Pursuant to 9 U.S.C. §10(a)(4).**

Contests such as the Prove Mike Wrong Challenge are governed by contract law. In this case Minnesota contract law applies (per the contest Rules). The applicable rules of contract construction are well-established, and not in contention. "When a contestant begins performance, he accepts the offer, and a unilateral contract is formed." *Mooney v. Daily News Co. of Minneapolis,* 116 Minn. 212, 217-18, 133 N.W. 573, 575 (1911). If no other act or statute defines the contractual relationship of the parties, then the Official Rules of the contest serve as the controlling contract. *Barnes v. McDonald's Corp.,* 72 F. Supp. 2d 1038, 1043 (E.D. Ark. 1999). Thus, this Court must apply basic rules of contract construction to determine whether the arbitration panel exceeded its powers.

To determine if an arbitrator has exceeded their powers, the Court should look to the arbitration agreement. *Prime Therapeutics LLC v. Omnicare, Inc.,* 555 F. Supp.2d 993, 999-1000 (D. Minn. 2008). Zeidman appropriately notes that a court should ask if the parties agreed had an agreement to arbitrate, and if so, whether the arbitrator had "the power to make the award that he made." (Zeidman Memorandum at 7, *quoting Trailmobile Trailer, LLC v. International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers*, 223 F.3d 744 (8th Cir. 2000).) In other words, if the arbitrator had no power *under the rules in the agreement*, the decision should be overturned under subsection 4. This manifests when an arbitrator attempts to do what is "fair," rather than working within the parameters established by the parties. *See, e.g., Oxford Health Plans LLC v. Sutter,* 569 U.S. 564, 569 (2013). As will be shown, there is no plausible reading of the Rules which allows for the panel's decision.

    a. **The Arbitration Panel Exceeded its Power by Flipping the Burden of Proof from Zeidman to Lindell Management**

The panel's authority necessarily was limited to interpreting the contest Rules. On that point everyone agrees. However, interpretation of a contract does not include the power to disregard language or create a new (supposedly more fair) standard. *Int'l Ass'n of Sheet Metal v. Union Pac. R.R. Co.,* No. 8:21-cv-59, 2021 U.S. Dist. LEXIS 253538, at *16 (D. Neb. Dec. 10, 2021). The contest Rules state that "participants will participate in a challenge to prove that the data Lindell provides, and represents reflects information from the November 2020 election, unequivocally does NOT reflect information related to the November 2020 election." (Schlesinger Decl. Ex. A. at 1, ECF No. 2.) There are two parts

6

to this sentence that the arbitration panel seems to combine into one.  First, Lindell Management provided data that reflects information ***from*** the November 2020 election.  Second, participants must prove that the data provided to them does ***not*** reflect information ***related to*** the November 2020 election.  The two requirements can only be read conjunctively.  The first requires a showing of relation, the second requires contestants to prove (again, "unequivocally" and to a "100% degree of certainty") that the data are not related to the election.

The Rules state that it was *Zeidman's* burden to prove that the data "unequivocally does NOT reflect information related to the November 2020 election." (*Id.*)  Nowhere do the Rules state that Lindell Management had to show the data proved the 2020 election was somehow fraudulent (the Rules are completely silent on that point).  In its decision, the arbitration panel flips the burden of whether the election data is from the election processes to Lindell Management.  Nothing in FAA, contest's arbitration clause, or case law gave the arbitration panel the authority to invent a burden of proof standard in the face of the plain contractual language allocating the burden of proof. As such, the arbitration panel exceeded its powers and Zeidman's Motion to Confirm the Arbitration Award should be denied.[3]

---

[3] Lindell Management's Motion to Vacate the Arbitration Award and Memorandum of Law in Support of that motion are forthcoming.

### b. The Arbitration Panel Exceeded its power by Changing the Requirements for Winning the Contest

In addition to inventing a burden of proof standard that did not exist in the Rules as written, the arbitration panel lowered the burden for Zeidman to win the contest by injecting its own view of reasonability into the contest Rules. This is not permissible under the FAA. Arbitrators "may not ignore the plain language of the contract…." *Paperworkers v. Misco, Inc.,* 484 U.S. 29, 38 (1987). An arbitrator's award should draw "its essence from the contract," and "not simply reflect the arbitrator's own notions of industrial justice." (*Id.*)

Zeidman was not able to prove that the data given to him was unrelated to the November 2020 election. His report did show the following:

1. that certain files were not from the election polling process. (Schlesinger Decl. Ex. B. at 15-22, ECF No. 2 (discussing files named "*cExtractl.mp4*," "*Chinese_SourceIP_HEX.txt*," "*Files Election Process Taxonomy.pdf*," etc.));

2. that he was not skilled enough to decipher one particular file in order to determine if it was related to the 2020 November election (*Id.* at 17-18, ECF No. 2 (discussing the file named *FinalReult_2020_HEX.txt*, "Even after he translated the file to rich text formant, it remained unreadable, and it appeared to be encrypted or perhaps just gibberish. It may be that it was unreadable because a cypher was placed on the file by those preparing the data for the contest");

3. That some of the files did not include packet data. (*Id.* at 16- (discussing that the following files did not contain packet data: "*Chinese_SourceIP_HEX.txt*," "*FinalReult_2020_HEX.txt,*" "*Targets_HEX.txt,*" and "*Target_MachineID_HEX.tx,*"))

4. That the file entitled "*mx-000123.csv*" did contain columns with headings that reference dates on or around the election, names of cities, and "source"

8

and "target" IP addresses and the names of candidates Trump and Biden. (*Id.* at 19-20)

None of these results square with the plainly stated requirements of the contest. The arbitration panel exceeded its powers by deciding that the words "related to" the November 2020 election actually meant "from the November 2020 election polling process." (*Id.* at 13-14.)

Most concerning, the arbitration panel exceeded its powers by determining that all Zeidman had to do was to prove that the files did not include packet data. Although packet data or PCAP data can be examined by experts based on time stamps, addresses, and other information to determine if it is genuine, the terms "packet data" and "PCAP" were never mentioned in the contest Rules. (*Id.* at 13.) The arbitration panel took it upon itself to decide that if the files were not in packet or PCAP format, then they definitely could not be from the election, even though the panel admits that "Mr. Zeidman testified that election data could be in another form than PCAP data." (*Id.* at 13, n.2.)

The Arbitration Panel pushed far beyond interpreting or even misreading the contract to interject its own definitions of what "related" means, to disregard the explicit requirement that participants had to prove their case "to a 100% certainty," and to lower the bar for Zeidman to win by requiring "packet data" and "PCAP" files when the contest does not mention either. As such, Zeidman's Motion to Confirm the Arbitration Award should be denied.

**2. Zeidman's Motion to Confirm the Arbitration Award is Premature**

This Court Ordered the Parties to file their respective Cross-Motions by October 25, 2023. (Order, ECF No. 16; Pretrial Scheduling Order 6, ECF No. 20.)  The Parties' arguments to the Court will be made based on the same facts and law, and will in essence constitute one Motion. The Court should therefore consider the Parties' Motions together, following oral argument at a time set by the Court.

## CONCLUSION

In this case, the arbitration panel exceeded its authority and the award should be vacated. In addition, because Lindell Management's Motion to Vacate Arbitration Award is still pending before this Court, Zeidman's Motion to Confirm Arbitration Award is premature and should therefore be denied.

DATED: August 25, 2023.                **PARKER DANIELS KIBORT LLC**

By */s/ Alec J. Beck*
　　Andrew D. Parker (#195042)
　　Alec J. Beck (#201133)
　　888 Colwell Building
　　123 N. Third Street
　　Minneapolis, MN 55401
　　Telephone: (612) 355-4100
　　parker@parkerdk.com
　　beck@parkerdk.com

　　*Attorneys for Respondent Lindell Management, LLC*