## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Lindell Management LLC Litigation | Case No. 0:23-cv-01433-JRT-DJF<br><br>**LINDELL MANAGEMENT'S REPLY IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD** |

### INTRODUCTION

The Parties have filed competing Motions regarding an arbitration decision issued in favor of Robert Zeidman ["Zeidman"] on May 16, 2023. The award concerns a contest sponsored by Lindell Management. The issue in the case involved interpretation and application of the Rules of that contest. Zeidman has filed a Motion to confirm the arbitration award. That Motion has been briefed by the Parties. Lindell Management has filed the present Motion to vacate the same award. In response to Zeidman's Responsive Memorandum, filed on October 13, 2023, Lindell Management submits this Reply Memorandum.

### ARGUMENT

Zeidman argues that Lindell Management merely disagrees with the Arbitration Panel's decision, and therefore believes the decision should be overturned. (Zeidman Memorandum at 2-3, ECF No. 40.) Zeidman misconstrues Lindell Management's argument. Lindell Management is *not* asking this Court to vacate the Panel's award simply because Lindell Management disagrees with the Panel's interpretation of the Contest

Rules.  Instead, Lindell Management argues the Panel exceeded its authority by relying on extrinsic evidence to interpret *admittedly, **unambiguous language*** and by completely disregarding other unambiguous language.  The Panel thereby impermissibly *altered* the Contest Rules.  *See Northwest Airlines, Inc. v. International Ass'n of Machinist & Aerospace Workers, Air Transp. Dist. Lodge #143*, 894 F.2d 998 (8th Cir. 1990):

> [T]he arbitrator may not disregard or modify unambiguous contract provisions [and] if the arbitrator interprets unambiguous language in a way different from its plain meaning, [the arbitrator] amends or alters the agreement and acts without authority.

*Id.* at 1000 (citations omitted).  This is a bright line for the Court when reviewing an arbitration decision: "Although the arbitrator may interpret ambiguous language, the arbitrator may not disregard or modify unambiguous contract language."  *George A. Hormel Co. v. United Food & Commercial Workers*, 879 F.2d 347, 349 (8th Cir. 1989).  "[I]f the arbitrator interprets unambiguous language *in any way different from its plain meaning*, he amends or alters the agreement and acts without authority."  *Inter-City Gas Corp. v. Boise Cascade Corp*., 845 F.2d 184, 187 (8th Cir. 1988)(emphasis added, citations omitted).  *Northwest Airlines, George A. Hormel* and *Inter-City Gas* are directly on point.  Lindell Management therefore asks this Court to consider whether the Arbitration Panel interpreted unambiguous language differently from its plain meaning.  As will be shown, the arbitrators in this case "interpreted" unambiguous language in a way that turned the Parties' agreement on its head.

The Panel conceded that it should "consider extrinsic evidence" to interpret the Contest Rules "***only if*** the document itself is ambiguous."  (Arbitration Decision at 12,

2

ECF No. 2-2, emphasis added)  The initial language at issue are the terms "data … from the November 2020 election" (shortened in the Panel to "from the election") and "election data."   The Panel made no finding that these terms were ambiguous.  Indeed, the Parties agreed that the language was *unambiguous*.  The Panel seemed to agree: "[T]here is not, in the Panel's view, an ambiguity, discrepancy, or inconsistency to be resolved here, and the parties have both stated the contract is unambiguous." (*Id*. at 13-14.)  However, instead of applying the terms' plain meaning, the Panel turned to extrinsic evidence to define "election data" as *one type* of **very specific** data: "Thus, if data is not PCAP data, it is not from the election, and it therefore cannot be 'related to the November 2020 election.'" (*Id.* at 13.)  Specifically, the Panel relied on statements made by Michael Lindell in publications promoting Lindell Management's Cyber Symposium (*id.* at 3-4), statements from members of Lindell Management's IT team (*id.* at 6-8), statements made by Mr. Douglas Gould (*id.* at 7-8), and statements made by Dr. Douglas Frank (*id.* at 8), to draw this conclusion.  In doing so, the Panel effectively changed the Contest Rules; the panel created a requirement that the contestants only demonstrate a lack of PCAP data (or require Lindell Management to show that there *were* PCAPs?).  This is exactly the type of action that exceeds an arbitrator's authority, and justifies vacating a decision. *See Keebler Co. v. Milk Drivers & Dairy Employees. Union, Local No. 471*, 80 F.3d 284, 287 (8th Cir. 1996)(vacating an arbitrator's award when the arbitrator "was not construing an ambiguous contract term, but rather was imposing a new obligation upon [a contracting party] thereby amending the [contract]").  The Panel thus imposed a "new obligation" not listed in the Challenge Rules.

In addition, in order to reach the conclusion that "from the election" or "election data" should be interpreted to mean *exclusively* PCAP data, the Panel impermissibly disregarded other plain and unambiguous language in the Contest Rules. *See Inter-City Gas Corp. v. Boise Cascade Corp.*, 845 F.2d at 187 (vacating an arbitration award when "[t]he contract language before us here is plain and unambiguous, and the arbitrator disregarded it"). Specifically, the Contest Rules required Zeidman to **prove** that "data Lindell provides … unequivocally does NOT REFELCT **INFORMATION RELATED TO** THE November 2020 election" and "is not *reflective of* the November 2020 election data." (*See* Exhibit A attached to Schlesinger Declaration, ECF No. 24., emphasis added.) Rather than construe the terms "information related to" and "reflective of" in accordance with their plain meanings, which the Panel was required to do, the Panel disregarded these terms altogether. (*See* Arbitration Decision at 13-14.) The Panel did this for two reasons: (1) acknowledging the plain meaning of these phrases in the Contest Rules would have required the Panel to consider more than just PCAP data in its interpretations of "data … from the November 2020 election" and "election data"; and (2) acknowledging the plain meaning of these phrases in the Contest Rules would be "unreasonable." (*Id.*) The Panel was thus forced to ignore contractual language in order to justify imposing its own standards on the Parties' contest rules.

The Panel's disregard of the terms "information related to" and "reflective of" as "unreasonable" is wholly unsupported by any law or legal theory. In a footnote, the Panel notes that "[i]f there were an inconsistency to be resolved in Lindell LLC's discretion, [Lindell Management's] interpretation would apply only if it were reasonable."

4

(Arbitration Decision at 14, n.3.) The Panel cited boilerplate contract law to support this proposition. (*Id.*) There is a serious analytical problem here: the Panel had concluded there was *no contractual inconsistency*, so the authority cited is inapposite. (*Id*. at 13-14.)Without an internal inconsistency, there is no ability to rewrite the contract "reasonably." *See Northwest Airlines, Inc.*, 894 F.2d at 1000; *Inter-City Gas Corp.*, 845 F.2d at 187. Taking a contractual provision giving discretion to Lindell Management, and using it to interpret the contract in favor of Zeidman, again turns the contractual language on its head. This is not the deal the Parties made.

Zeidman relies heavily on *Oxford Health Plans L.L.C. v. Sutter*, 569 U.S. 564 (2013) to support his argument that this Court should enforce the award. *Oxford Health* does not support the Panel's decision. In *Oxford* the arbitrator "focused on the **text** of the arbitration clause" to reach the conclusion that the arbitration clause "**on its face**" expressed the parties' intent that a class arbitration could be maintained in arbitration. *Id.* at 568 (emphasis added). The Supreme Court upheld the arbitrator's decision specifically because "based on **textual exegesis**, [the arbitration clause] on its face … expresses the parties' intent that class action arbitration can be maintained." The Court further noted that the arbitrator properly conducted a "**textual analysis.**" *Id.* at 570 (emphasis added). Indeed, the *Oxford Health* arbitrator did not consider *any* extrinsic evidence, nor did he disregard any plain or unambiguous language in the arbitration clause, in reaching his conclusion. *See id.* at 566-67. Instead, he read the entirety of the arbitration agreement, and gave full effect to the plain language of the statute. *Oxford Health* supports vacation of the award in the present case.

5

## CONCLUSION

Here, unlike the arbitrator in *Oxford Health*, the Arbitration Panel improperly relied on extrinsic evidence when considering the Contest Rules, despite both Parties stipulating that the Rules were unambiguous. The Panel then completely ignored other unambiguous terms which were inconvenient to its decision. The Panel thus imposed what it believed to be a "fair" and "reasonable" deal on the Parties, contractual language notwithstanding. In doing so, it "imposed its own notions of justice" rather than simply interpret the contract. The Panel exceeded its authority. Its award should be vacated.

**PARKER DANIELS KIBORT LLC**

Dated: October 27, 2023     By: */s/ Alec J. Beck*
Andrew Parker (#195042)
Alec J. Beck (#201133)
888 Colwell Building
123 N. Third Street
Minneapolis, MN 55401
612-355-4100
*parker@parkerdk.com*
*beck@parkerdk.com*

*Attorneys for Respondent Lindell Management LLC*