**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

ROBERT ZEIDMAN,

                                                    Civil No. 23-1433 (JRT/DJF)
                              Plaintiff,

v.

                                                    **MEMORANDUM OPINION AND ORDER**
LINDELL MANAGEMENT LLC,                             **CONFIRMING ARBITRATION AWARD**

                              Defendant.

---

Brian A. Glasser, **BAILEY & GLASSER LLP**, 209 Capitol Street, Charleston, WV 25301; Cary Joshi, **BAILEY & GLASSER LLP**, 1055 Thomas Jefferson Street Northwest, Suite 540, Washington, DC 20007; David E. Schlesinger, **NICHOLS KASTER PLLP**, 4700 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for Plaintiff.

Alec J. Beck and Andrew D. Parker, **PARKER DANIELS KIBORT LLC**, 123 North Third Street, Suite 888, Minneapolis, MN 55401, for Defendant.


Plaintiff Robert Zeidman responded to Defendant Lindell Management LLC's ("Lindell LLC") "Prove Mike Wrong Challenge" ("Challenge") concerning November 2020 election fraud allegations. Zeidman presented his findings to the Challenge judges and upon receipt of an unfavorable outcome, he filed an arbitration demand. The arbitration panel ("panel") unanimously found Zeidman won the Challenge and ordered Lindell LLC to pay Zeidman the $5 million reward. Both parties have asked the Court to review the arbitration award. Because the panel arguably interpreted and applied the contract, the

Court will confirm the arbitration award and deny Lindell LLC's motion to vacate the award.

**BACKGROUND**

**I.   FACTS**

Zeidman has 45 years of software development experience.  (Decl. David E. Schlesinger ("Schlesinger Decl.") ¶ 3, Ex. B ("Arb. Award") at 3, May 19, 2023, Docket No. 2-2.)[1]  Lindell LLC is a Minnesota LLC owned and operated by Michael Lindell.  (*Id.*)  Lindell is widely known to have disputed the 2020 election results.  (*Id.* at 3–4.)  Under suspicions of Chinese involvement in the 2020 presidential election, Lindell LLC hosted a Cyber Symposium which included a "Prove Mike Wrong Challenge."  (*Id.* at 3–4.)  A participant who proved "that this cyber data is not valid data from the November Election" would be awarded $5 million.  (*Id.* at 5.)

Zeidman signed the Challenge rules, which included mandatory arbitration.  (*Id.* at 6; Schlesinger Decl. ¶ 2, Ex. A ("Challenge Official Rules") ¶ 9, May 19, 2023, Docket No. 2-1.)  The relevant Challenge rules stated:

> 1. Overview.  Lindell Management, LLC. ("Lindell [LLC]") has created a Challenge where participants will participate in a challenge to prove that the data Lindell [LLC] provides, and represents reflects information from the November 2020 election, unequivocally does NOT reflect information related to the November 2020 election (the "Challenge"). …

---

[1] The parties agreed that the record for the Court's review is the uncontested factual record from the arbitration proceedings.  (Joint Stipulation Factual R. at 1, July 31, 2023, Docket No. 21.)

5.  Participants must submit all of their evidence in writing to a three member panel selected by Lindell [LLC] who will determine whether the submission proves to a 100% degree of certainty that the data shown at the Symposium is not reflective of November 2020 election data.

6.  Winners.  The winners will be determined on August 12, 2021 by 8:00 pm CDT.  The three-member panel selected by Lindell [LLC] will identify the winners based on their professional opinion that the submission proves to a 100% degree of certainty that the data shown at the Symposium is not reflective of November 2020 election data. …

7.  … In the event there is an alleged or actual ambiguity, discrepancy or inconsistency between disclosures or other statements contained in any Challenge-related materials and/or these Official Rules (including any alleged discrepancy or inconsistency in these Official Rules), it will be resolved in Lindell [LLC]'s sole discretion. …

(Arb. Award at 6 (omission in original).)

Before the Challenge, Lindell LLC had a group of software professionals review the data.  (*Id.* at 7.)  The format of the data surprised the professionals as they expected it to be packet capture data, or PCAP files.  (*Id.*)  "Most or all" of the data originated from Dennis Montgomery who claimed to have captured the data from internet traffic.  (*Id.* at 8.)  Data extracted in real time from the internet is expected to be packet capture data or PCAP files.  (*Id.*)

Lindell LLC provided Zeidman with 11 files, only a portion of the total data.  (*Id.* at 9–10.)  After reviewing the files, Zeidman presented a 15-page report explaining that each file he received lacked packet capture data.  (*Id.* at 10.)  After considering Zeidman's response, the Challenge judges determined he had not provided enough information to unequivocally prove the data was not election data.  (*Id.* at 11.)  In response, Zeidman filed an arbitration demand.  (*Id.*)

The panel limited its decision to whether Zeidman won the Challenge, whether the Challenge rules were unconscionable, and whether Lindell LLC violated the Minnesota Consumer Fraud Act.  (*Id.*)  The panel further limited itself to the 11 files Zeidman analyzed.  (*Id.* at 11.)

The panel determined Minnesota contract law applied to the legal issues.  (*Id.*)  The panel began by interpreting two phrases: (1) "prove that the data Lindell [LLC] provides, and represents reflects ***information from the November 2020 election***, unequivocally does NOT reflect information related to the November 2020 election," and (2) "whether the submission proves to a 100% degree of certainty that the data shown at the Symposium is not reflective of ***November 2020 election data***."  (*Id.* at 12–13 (emphasis in Arb. Award).)

The parties and the panel agreed that the language in the Challenge rules was unambiguous, and thus interpretation required no parole or extrinsic evidence.  (*Id.* at 13, 15.)  The panel determined that "from the election" unambiguously meant data specifically "from the election process itself," rather than any data broadly "related to" or "about" the election as Lindell LLC argued.  (*Id.* at 13–14.)  While unambiguous contract terms are to be given their plain meaning, the panel explained that the meaning still must be reasonable in the context of the entire contract, construed with the parties' intent in mind, and the panel feared the reading proposed by Lindell LLC would render the Challenge unwinnable and thus unreasonable.  (*Id.* at 13–15.)  The panel also concluded

-4-

that the only possible election data would be packet capture data, so if the participant

concluded it was not that type of data, they would have proven it cannot be "related to

the November 2020 election." (*Id.* at 14.)

With the meanings of the unambiguous terms established, the panel then looked

at Zeidman's proof for each file, his expert support, and the responses of Lindell LLC's

experts. (*Id.*)  The panel concluded that Zeidman proved that each file did not include

packet capture data and thus was not related to the November 2020 election, so he had

satisfied the Challenge rules, and was entitled to the $5 million reward. (*Id.* at 15–22.)

The panel then disposed of the unconscionability and Minnesota Consumer Fraud Act

claims. (*Id.* at 23.)

## II.     PROCEDURAL HISTORY

Lindell LLC filed a motion in state court to vacate the arbitration award. (*See* Order

at 1, Jun. 22, 2023, Docket No. 1.)  Zeidman filed this current action to confirm the

arbitration award. (Pet., May 19, 2023, Docket No. 1.)  The state action was removed to

federal court and consolidated with this action. (*See* Order at 2–3.)

## DISCUSSION

## I.     STANDARD OF REVIEW

A court's review of an arbitration award is very limited.  *Lee v. Chica*, 983 F.2d 883,

885 (8th Cir. 1993).  Where parties agree to arbitrate, a court cannot substitute a judicial

determination for the arbitrator's decision.  *United Paperworkers Int'l Union, AFL-CIO v.*

*Misco, Inc.*, 484 U.S. 29, 40–41 n.10 (1987).  Courts may not review the merits of an

arbitration award "even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Bureau of Engraving, Inc. v. Graphic Commc'n Int'l Union, Loc. 1B*, 284 F.3d 821, 824 (8th Cir. 2002) (quoting *Misco*, 484 U.S. at 36). Even if the Court is convinced that the arbitrator committed serious factual or legal error, so "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," arbitration awards must be confirmed. *Id.* (quoting *Misco*, 484 U.S. at 38).

Although extremely limited, arbitration awards are not entirely free from judicial review. The Federal Arbitration Act ("FAA") provides limited grounds on which an arbitration award may be vacated. 9 U.S.C. § 10. The FAA requires that an arbitration be upheld unless it is obtained by "corruption, fraud, or undue means," where there is "evident partiality or corruption in the arbitrators," where there was misconduct by the arbitrators, or where the arbitrators exceeded their powers. *Id.* §§ 10(a)(1)–(4). The Eighth Circuit has held that beyond the grounds provided in the FAA, an arbitration award will be vacated only where it is "completely irrational or evidences a manifest disregard for the law." *Hoffman v. Cargill, Inc.*, 236 F.3d 458, 461 (8th Cir. 2001) (citation omitted).

## II.     ANALYSIS

Lindell LLC challenges the arbitration award on only one ground; that the panel acted outside the scope of its authority by modifying the Challenge rules.

### A.      Contract Interpretation Under Minnesota Law

The arbitration clause of the Challenge rules allowed the panel to interpret the contract and apply it to Zeidman's performance.  The primary goal in interpreting a contract is "to determine and enforce the intent of the parties." *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 913 N.W.2d 687, 692 (Minn. 2018) (quotation omitted).  Whether a contract is ambiguous, and the interpretation of an unambiguous term are questions of law. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003).  "A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation." *Winthrop Res. Corp. v. Sabert Corp.*, 567 F. Supp. 2d 1084, 1091 (D. Minn. 2008) (citing *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997)).  The interpretation of an ambiguous term is a factual question. *See Denelsbeck*, 666 N.W.2d at 346.  Because the parties and the panel agree that the Challenge rules are unambiguous, the interpretation is a matter of law for the panel to decide.

Unambiguous terms in a contract are to be given their plain and ordinary meaning. *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 704 (Minn. 1999).  The contract terms are also to be interpreted as a whole, within the context of the entire contract, to meet the parties' intent and harmonize all contract provisions. *Trebelhorn v. Agrawal*, 905 N.W.2d 237, 242 (Minn. Ct. App. 2017).  Unambiguous provisions cannot be rewritten, modified, or limited in effect by a specific construction. *Storms, Inc. v. Mathy Constr. Co.*, 883 N.W.2d 772, 776 (Minn. 2016) (citation omitted).  Additionally, extrinsic evidence cannot be used when the contract is unambiguous. *Trebelhorn*, 905 N.W.2d at

243.  When the contract term is unambiguous, the parties' intent must be determined from the "language of the written contract alone."  *Minnesota Vikings Football Stadium, LLC v. Wells Fargo Bank, Nat'l Ass'n*, 193 F. Supp. 3d 1002, 1011 (D. Minn. 2016) (citation omitted).

### B.      Contract Modification

Lindell LLC argues the panel modified the Challenge rules in two ways: inputting the requirement of packet capture data and reversing the burden such that it rested with Lindell LLC.  Arbitrators are not entitled to deference when their interpretation does not "draw its essence" from the contract such that its interpretation of an unambiguous term is "expressly contrary to the terms of the agreement."  *United States Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 907 F. Supp. 2d 986, 993–94 (D. Minn. 2012) (citation omitted).

### i.   Language Modification

The panel began its analysis of the Challenge rules by accepting the proposition of both parties that the language was unambiguous and thus could be interpreted without the use of extrinsic evidence.  When it identified the provisions requiring interpretation, its focus was less on the term "related to" and more on the overall concept of "information from the November 2020 election" and "November 2020 election data."

The panel's conclusion that the contract referred to data specifically from the election process considered the fact that anything even remotely connected to the election, as Lindell LLC proposed, could include newspaper articles and broadcast news

which would effectively negate the purpose of having a challenge to begin with.  The

Court finds this step in the interpretation to logically honor and harmonize the contract.

Thus, the panel did not modify the contract or exceed its scope by imposing this

interpretation.

The panel took its interpretation a step further by finding packet capture data was

the only possible type of election data.  The panel justified this finding with the fact that

the data was captured from the internet and the only possible way to capture data live

from the internet is through packets.  The panel cited to the statement by Dr. Douglas

Frank, one of Lindell LLC's experts and a Challenge judge, and statements by Lindell

himself that claimed the data would be in packet form and if it was not in packet form, it

could not be election data.  The panel also referenced the source of "most or all" of the

data, Dennis Montgomery, who "captured the data from internet traffic."  (Arb. Award at

7.)  All this information together led the panel to the conclusion that if the data were to

relate to the election, it would have to be packet capture data and thus proof that the

data was in any other form proved it was not election data.

The Court tracks the path interpreting "election data" but finds the panel loses

focus on its discussion of packet capture data.  Admittedly, the panel was tasked with the

difficult job of interpreting a poorly written contract, but in evaluating the same

information, the Court finds it to be quite a leap that the only possible data that could

constitute "election data" would be packet capture data.

However, the Court's potential disagreement with the outcome is not the standard upon which to review an arbitration award.   The Court must only decide if the panel was arguably applying the contract.  *Horton, Inc. v. NSK Corp., Inc.*, 544 F. Supp. 2d 817, 823 (D. Minn. 2008).  There are two explanations for the panel's outcome that align with the legal standard of review.  First, it is possible that the insertion of packet capture data was simply an application of the law to the facts in this case.  More likely, although the panel and parties agreed the language was unambiguous, the panel used extrinsic evidence.

Under Minnesota contract law, in interpreting unambiguous terms, the use of extrinsic evidence is not permitted.  *Trebelhorn*, 905 N.W.2d at 243.  But even a serious legal error is not a reason to vacate the award.  *Horton*, 544 F. Supp. 2d at 823.  Because the panel was arguably interpreting and applying the contract, even the potentially serious legal error of using extrinsic evidence to interpret an unambiguous term is not enough to vacate the award.  As such, the Court will not vacate the award despite the fact that it may have reached a different outcome if reviewing the case *de novo*.[2]

### ii.  Burden Shift

Lindell LLC's burden shift argument stems from the panel's interpretation of the language stating that Challenge participants must "prove that the data Lindell [LLC]

---

[2] To be clear, the Court's disagreement with the panel is limited to the technical matter of contract interpretation.  It will not entertain any unproven theories of election fraud or interference and its position here should not be understood as even the slightest endorsement of Lindell's broader election related claims.

CASE 0:23-cv-01433-JRT-DJF  Doc. 45  Filed 02/21/24  Page 11 of 12


provides, and represents reflects **information from the November 2020 election**, unequivocally does NOT reflect information related to the November 2020 election." (Arb. Award at 12–13 (emphasis in Arb. Award).)  The dispute is over whether the first clause can be read into the Challenge rules or if it is merely a predecessor statement to contextualize what the participants must do.

Lindell LLC argues that the panel's decision that Zeidman need only insert doubt about the data Lindell LLC presented is not the same as proving that the data is unequivocally not from the election thus shifting the burden and modifying the contract. Lindell LLC's argument may be a compelling alternative interpretation but the standard for reviewing an arbitration award does not weigh competing interpretations.  The Court is not at liberty to review the outcome of an arbitration award simply because one party believes it to be incorrect.  Retrial of the issues is not within the purview of the Court.  *St. Mary's Med. Ctr. v. Int'l Union of Operating Eng'rs, Local 70*, No. 11-1641, 2013 WL 3270388, at *2 (D. Minn. June 26, 2013) (citing *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013)).  Thus, Lindell LLC's burden shifting argument is insufficient to vacate the arbitration award when the panel's result conforms with its authority to interpret the contract.

## CONCLUSION

The Court's responsibility in reviewing an arbitration award is not to reevaluate the merits but rather ensure that the panel acted appropriately.  Lindell LLC's only basis for

Court action was that the panel acted outside the scope of its authority in issuing the award.  Even though the Court may have reached a different outcome given an independent initial review of the information, the Court fails to identify evidence that the panel exceeded its authority.  Under the Court's narrow review, it will confirm the arbitration award.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion to Confirm Arbitration Award [Docket No. 22] is **GRANTED**.

2.  Defendant's Motion to Vacate Arbitration Award [Docket No. 35] is **DENIED**.

3.  Plaintiff is awarded $5 million plus post-judgment interest beginning April 19, 2023, to be paid within 30 days of issuance of this Order, per the Arbitration Award.

**LET JUDGMENT BE ENTERRED ACCORDINGLY.**

DATED:  February 21, 2024
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge