# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Lindell Management LLC Litigation | Case No. 23-cv-1433 (JRT/DJF) |
| Robert Zeidman,<br><br>Petitioner,<br><br>v.<br><br>Lindell Management, LLC,<br><br>Respondent. | **RESPONDENT LINDELL MANAGEMENT, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER ROBERT ZEIDMAN'S MOTION FOR REHEARING BY THE ARBITRATION PANEL** |

Respondent Lindell Management, LLC ("LMC") submits this memorandum of law in opposition to Petitioner Robert Zeidman's ("Zeidman") Motion for Rehearing by the Arbitration Panel. (Doc. 116).

## INTRODUCTION

On July 23, 2025, the Eighth Circuit remanded this matter "with directions either to grant LMC's Motion to Vacate Arbitration Award or for further proceedings not inconsistent with this opinion." *Zeidman v. Lindell Mgmt. LLC*, 145 F.4th 820, 828 (8th Cir. 2025), *cert. denied*, No. 25-504, 223 L. Ed. 2d 512 (2026). Ignoring the portion of the Eighth Circuit's remand regarding the granting of LMC's motion to vacate, Zeidman

now relies on the boilerplate remand instruction "for further proceedings not inconsistent with this opinion" to argue that this Court should send this matter back to the same three-member arbitration panel (the "Panel") for a rehearing, *see* Pl.'s Mem. in Support of Mot. for Reh'g by the Arbitration Panel at 3 ("Pl.'s Mem.")(Doc. 118), thus affording Zeidman a second bite of the apple on his claims against LMC based on the Prove Mike Wrong Challenge (the "Challenge").

The Challenge's Official Rules (the "Rules") explained the Challenge as follows:

> [LMC] has created a Challenge where participants will participate in a challenge to prove that the data Lindell [LLC] provides, and represents reflects information from the November 2020 election, unequivocally does NOT reflect information related to the November 2020 election (the 'Challenge').

*Zeidman v. Lindell Mgmt. LLC*, 718 F. Supp. 3d 934, 937 (D. Minn. 2024)(quoting Rule No. 1). "A participant who proved 'that this cyber data is not valid data from the November Election' would be awarded $5 million." *Id*. (quoting the Reasoned Decision and Final Award, *Zeidman v. Lindell Mgmt. LLC*, Case Number: 01-21-0017-1862, at 5 (April 19, 2023)(Doc. 2-2)(hereinafter the "Arbitration Award"). The Rules never defined the type of data that LMC was required to provide for purposes of the Challenge. *See Zeidman*, 145 F.4th at 827-28 (stating that the Rules never mentioned the specific format of the data that LMC was to produce).

Zeidman claimed that he was entitled to the $5 million award because he had demonstrated that the data provided by LMC for purposes of the Challenge was not proper election data. Demand for Arbitration, *Zeidman v. Lindell Mgmt. LLC*, Case Number: 01-21-0017-1862, ¶¶ 38, 40 (Nov. 3, 2021)(the "Demand")(Doc. 24-2). After

2

LMC declined to pay the award, Zeidman commenced an arbitration, asserting a breach of contract claim and a claim under the Minnesota Consumer Fraud Act. *See id*. ¶¶ 37-50.

On April 19, 2023, the Panel issued the Arbitration Award, ruling in favor of Zeidman on his breach of contract claim. Arbitration Award at 22 ¶ 1. In so ruling, the Panel found that the Rules were unambiguous and, as a result, that Minnesota law precluded the consideration of any extrinsic evidence.[1]

The Panel, however, ignored Minnesota law when imposing an extracontractual requirement on the Rules, concluding that "if data is not PCAP data, it is not from the election, and it therefore cannot be related to the November 2020 election." Arbitration Award at 13 (internal quotation marks omitted). In other words, if LMC did not provide PCAP data (which is also known as package capture data[2]) to participants, a fortiori, the data could not be election data. *See id*. at 18 (providing that "Mr. Zeidman has shown this file does not include packet data, and it therefore cannot contain election data, from the November 2020 election").

---

[1] This Court also stated that "[t]he parties and the panel agreed that the language in the Challenge rules was unambiguous, and thus interpretation required no parole or extrinsic evidence." *Zeidman*, 718 F. Supp. 3d at 938 (citing the Arbitration Award at 13, 15). Zeidman expressly conceded that "[t]here were no other rules or requirements for the Challenge other than those contained in the Challenge Contract." Demand ¶ 19.

[2] The Panel explained that "[p]acket capture data relates to the way computer networks send data. Data is sent in the form of packets. Packets are small packages of binary data, i.e. 1s and 0s. They include information that acts like an envelope, specifying the IP address of the machine that sent the data, the IP address of the recipient, and the dates of sending and receipt." Arbitration Award at 6-7.

The Eighth Circuit ruled that the Panel improperly ignored Minnesota law by relying "almost entirely on extrinsic evidence" to find that LMC had been required to provide Challenge participants with a specific type of data, that is, packet capture data or PCAP data, a requirement that was NOT in the Rules:

> From the four corners of the Challenge contract as defined by the Official Rules, there is no way to read 'information *related to* the November 2020 election' as meaning only information that is 'PCAP data.' The panel thus did more than construe an ambiguous contract term. Adding a form-of-data requirement imposed a new obligation upon LMC, effectively 'amending the [contract].'

*Zeidman*, 145 F.4th at 828 (citation omitted; emphasis in original).

In the wake of the Eighth Circuit's reversal and remand, Zeidman moved this Court for an order sending this matter back to the Panel for a rehearing. *See, e.g.*, Pl.'s Mem. at 3.

The Court should deny Zeidman's motion for a number of reasons. *First*, the Eighth Circuit's ruling eliminated as a matter of law the only arguable basis for Zeidman's potential recovery on either his breach of contract or Minnesota Consumer Fraud Act claims. Both of those claims are premised solely on the extracontractual requirement that only one type of data, capture packet data, could constitute "election data" for purposes of the Challenge and that LMC's failure to provide any capture packet data meant that it had either breached the contract, i.e., the Rules, or violated the Minnesota Consumer Fraud Act because LMC refused to pay Zeidman the reward even though he alleged that he had "demonstrated that the data provided by Lindell unequivocally does NOT reflect information related to the November 2020 election."

4

*See* Demand ¶¶ 39-40, 44-47 (setting forth same allegations regarding packet capture data in support of both claims).

The Eighth Circuit, however, expressly rejected the Panel's determination that capture packet data was the only form of data that could possibly qualify as election data. *See Zeidman*, 145 F.4th at 827-28.  Therefore, the linchpin of those two claims is eliminated as a matter of law, and there is nothing to rehear on either claim.

*Second*, the Eighth Circuit's decision also eliminates any viable argument that the Rules are unconscionable.[3]  The Panel had denied Zeidman's claim of unconscionability based on the Panel's own interpretation of the Rules (while rejecting LMC's interpretation thereof).[4]  But permitting the rehearing this claim would directly conflict with the Eighth's Circuit's decision.  The Eighth Circuit expressly rejected the Panel's interpretation of the Rule and enforced the relevant terms of the Rules as written, which was exactly the position LMC took regarding the Rules in the arbitration as well as before this Court and the Eighth Circuit.  *See id*.  Therefore, any argument regarding the alleged unconscionability of enforcing the clear terms of the Rules, in other words, consistent with LMC's position, cannot prevail as a matter of law in the face of the Eighth Circuit's ruling.

---

[3] Zeidman did not assert a claim based on unconscionability, *see generally* Demand, but the Panel indicated that Zeidman "also claims that, if the Contest rules are interpreted in the way Lindell LLC interprets them, they are unconscionable."  Arbitration Award at 2.
[4] Arbitration Award at 22 (determining "that the Contest rules cannot reasonably be read in the way Lindell LLC claims, and so are not unconscionable").

*Third*, now that the Eighth Circuit has rejected the Panel's imposition of an extracontractual requirement regarding the format of the data and enforced the Rules as written, there is no viable theory on which Zeidman could be able to prevail if the case were to be remanded for a second arbitration hearing. Such a rehearing would be futile and inconsistent with the Eighth Circuit's ruling.

Based on the foregoing, LMC asks the Court to deny Zeidman's motion for a rehearing before the Panel, vacate the Arbitration Award in its entirety, and enter final judgment in favor of LMC on all of Zeidman's claims.

## BACKGROUND AND PROCEDURAL HISTORY

Zeidman's claims are based on LMC's "Prove Mike Wrong Challenge." *Zeidman*, 145 F.4th at 822; *see also Zeidman*, 718 F. Supp. 3d at 936-38 (describing same). The Challenge, which was presented in conjunction with a Cyber Symposium conducted by LMC in August 2021, offered a $5 million reward (in total) if any participant(s) were able to prove that the data LMC would provide "*unequivocally does NOT reflect information related to the November 2020 election….*" *Zeidman*, 145 F.4th at 823 (quoting the Rule No. 1)(capitalization and italics in the original).

The Rules, which Zeidman signed, also provided that:

> **Winners**. The winners will be determined on August 12, 2021 by 8:00 pm CDT. The three-member panel selected by [LMC] will identify the winners based on their professional opinion that *the submission proves to a 100% degree of certainty that the data shown at the Symposium is not reflective of November 2020 election data. . . .*

*Id*. (quoting the Rule No. 6)(emphasis and brackets added in opinion).

Zeidman reviewed the data contained in the files provided by LMC, and then

6

submitted a fifteen-page report in which he alleged that the LMC data "'unequivocally does not contain packet data of any kind and do[es] not contain any information related to the November 2020 election.'" *Id.* at 822 (quoting Zeidman's report). Zeidman filed the Demand after LMC did not agree to pay the award. *See, e.g.*, Demand ¶¶ 35-36.

On April 19, 2023, the Panel issued its unanimous Award. *See* Arbitration Award; *see also Zeidman*, 145 F.4th at 822. The Panel ruled in Zeidman's favor on his breach of contract claim, finding that:

> Mr. Zeidman performed under the contract. He proved the data Lindell
> LLC provided, and represented reflected information from the November
> 2020 election, unequivocally did not reflect November 2020 election data.
> Failure to pay Mr. Zeidman the $5 million prized [sic] was a breach of the
> contract, entitling him to recover.

Arbitration Award at 22. The Panel simply denied Zeidman's unconscionability claim, *id.* at 23 ¶ 2; and denied Zeidman's Minnesota Consumer Fraud Act claim as moot. *Id.* at 23 ¶ 3.

On February 21, 2024, this Court confirmed the Panel's ruling and denied LMC's motion to vacate. *Zeidman*, 718 F. Supp. 3d at 941-42. The Court, however, questioned the Panel's rationale, finding "it to be quite a leap that the only possible data that could constitute election data would be packet capture data." *Id.* at 940 (internal quotations omitted). The Court further called out the Panel's reliance on extrinsic evidence to construe the clear Rules, but concluded that:

> [E]ven the potentially serious legal error of using extrinsic evidence to
> interpret an unambiguous term is not enough to vacate the award. As such,
> the Court will not vacate the award despite the fact that it may have reached
> a different outcome if reviewing the case *de novo*.

7

*Id*. at 941 (emphasis in original; footnote omitted).

LMC appealed this Court's denial of its motion to vacate and the Court's confirmation of the Arbitration Award.  On July 23, 2025, the Eighth Circuit reversed. *Zeidman*, 145 F.4th at 828.  The Eighth Circuit concluded that the Panel had "exceeded its powers under 9 U.S.C. § 10(a)(4)," *id*. at 823 (internal quotations omitted), because while acknowledging that the Rules were unambiguous and therefore extrinsic evidence was off-limits under Minnesota contract law, the Panel nonetheless relied "almost entirely on extrinsic evidence" to impose on LMC an extracontractual data-format requirement.  *Zeidman*, 145 F.4th at 827-28.

The Eighth Circuit remanded the case to this Court "with directions either to grant LMC's Motion to Vacate Arbitration Award or for further proceedings not inconsistent with this opinion."  *Id.* at 828.

On February 13, 2026, Zeidman moved this Court for a rehearing by the Panel. LMC asks the Court to deny Zeidman's motion, vacate the Arbitration Award, and dismiss the matter with prejudice.

**LEGAL ARGUMENT**

I.      **THE EIGHTH CIRCUIT'S RULING DEFEATS ZEIDMAN'S BREACH OF CONTRACT AND CONSUMER FRAUD CLAIMS AS A MATTER OF LAW, LEAVING NO VIABLE ARGUMENT FOR ZEIDMAN TO PREVAIL.**

The Eighth Circuit's ruling eliminated as a matter of law Zeidman's sole proffered argument in support of his breach of contract and Minnesota Consumer Fraud Act claims, that is, by rejecting the Panel's grafting of an extracontractual requirement, a "form-of-

8

data requirement," into the Rules. *See id*. at 828. The imposition of that data requirement, which the Panel concluded must be capture packet (i.e., PCAP) data and only capture packet data, coupled with LMC's alleged failure to provide capture packet data in the Challenge, was the sole basis for the Panel's ruling in favor of Zeidman on his breach of contract claim. *See, e.g.*, Arbitration Award at 13 (determining "if data is not PCAP data, it is not from the election, and it therefore cannot be 'related to the November 2020 election'"). Thus, the Panel concluded that Zeidman had "unequivocally" proved the data was not "related to the November 2020 election," and they determined that because of that, Zeidman had won the Challenge and was entitled to the $5 million reward. *Id.* at 22. Thus, "[f]ailure to pay Mr. Zeidman the $5 million prized [sic] was a breach of contract, entitling him to recover." *Id*.

The Eighth Circuit confirmed the Panel's decision rested solely on the basis of this extracontractual data definition. *See Zeidman*, 145 F.4th at 825 (providing that "[t]he panel concluded that Zeidman proved that the files provided were not in PCAP format; therefore, they were not election data. Because Zeidman performed under the Official Rules, the panel awarded him the $5 million reward.").

The evidence proffered by Zeidman at the arbitration hearing further demonstrates that the allegedly flawed format of the data provided by LMC was the only basis for Zeidman's claims. For example, Zeidman proffered a fifteen-page report he had prepared that analyzed the data files provided by LMC. *See* Arbitration Award at 8-9 (discussing Zeidman report). His sole conclusion was that "'the data Lindell provides, and represents reflects information from the November 2020 election, unequivocally does not contain

9

**packet data of any kind** and do [sic] not contain any information related to the November 2020 election.'" *Id*. at 9 (quoting report)(emphasis added); *see Zeidman*, 145 F.4th at 822 (quoting same conclusion in Zeidman's report).

Dr. Michael Brogioli, Zeidman's expert witness, also relied on the same theory regarding data format to conclude that the LMC data could not be election data, that is, because the file about which he was opining did not contain "packet data." *See, e.g.*, Arbitration Award at 16 (discussing Dr. Brogioli's conclusion as to one of the data files).

Such evidence further confirms that Zeidman's claims are based solely on the format of the data provided by LMC to support the Panel's conclusion that there was no election data. The Eighth Circuit, however, expressly rejected the Panel's imposition of that data-format requirement as a matter of law. As a result, Zeidman's breach-of-contract claim is fatally flawed, and the Court should deny Zeidman's efforts to rearbitrate a now baseless claim.

## II.     THE EIGHTH CIRCUIT RULING ALSO DEFEATS ZEIDMAN'S CLAIM UNDER THE MINNESOTA CONSUMER FRAUD ACT.

Zeidman asserts a second claim alleging that LMC violated a section of the Minnesota Consumer Fraud Act dealing with prizes notices and solicitations. Minn. Stat. § 325.F755 (the "MCFA"). *See* Demand ¶¶ 41-50. Zeidman alleges that LMC did not provide any capture packet data, that, as a result, the data provided does not relate to the election, and that despite Zeidman's proof that the data is unrelated to the election, LMC refused to pay the reward:

> Lindell stated as a term of the contest that to win the $5 million, participants had to demonstrate that the data provided by Lindell at the

10

> Cyber Symposium unequivocally did NOT reflect information related to the November 2020 election.
>
> Mr. Zeidman demonstrated that the data provided by Lindell unequivocally does NOT reflect information related to the November 2020 election. Ex. B.[5]
>
> Lindell created a contest knowing that it would not declare a winner even if that person complied with all requirements and rules.

Demand ¶¶ 44, 45, 48 (capitalization in the original).

Therefore, Zeidman's alleged successful demonstration regarding the data at issue was based solely on the absence of capture packet data. *See id*. Thus, in order to succeed, this claim, like the breach of contract claim, is contingent on the validity of the extracontractual data-format requirement imposed by the Panel. And like the breach of contract claim, the Eighth Circuit's express reversal of the Panel's capture packet data requirement defeats this claim as a matter of law.

Zeidman also conceded in the arbitration proceeding that if he were to prevail on his breach-of-contract claim, his MCFA claim would be moot. Arbitration Award at 22 (noting Zeidman's concession). His admission regarding the connection and common bases of the two claims provides an additional reason why he is unable to prevail on his MCFA claim as a result of the Eighth Circuit's ruling. *See, e.g.*, *Churlik v. Gate City Bank*, No. 23-cv-0637 (WMW/LIB), 2024 U.S. Dist. LEXIS 20090, at *8 (D. Minn. Feb. 6, 2024)(ruling that because a plaintiff's breach of contract claim, which was based on

---

[5] Zeidman's report is Exhibit B to the Demand. *See* Demand ¶ 25 (stating same). As set forth above, Zeidman's report advanced only one conclusion, that Zeidman had proven that the data provided by LMC did not include any capture packet data and thus, was not related to the election. *See* Award at 9 (discussing same).

conduct by the defendant which comported with the terms of the parties' unambiguous contract, failed as a matter of law, plaintiff's claim alleging "violations of the MCFA also fail[s]").

### III.   THERE IS NO VIABLE BASIS TO CONDUCT A REHEARING ON ZEIDMAN'S CLAIM OF UNCONSCIONABILITY.

The Demand did not allege an unconscionability claim, *see generally* Demand, but the Panel indicated that unconscionability was one of the issues it was to consider, noting that Zeidman "claims that, if the Contest rules are interpreted in the way Lindell LLC interprets them, they are unconscionable."  Arbitration Award at 2.  The Panel determined that "the Contest rules cannot reasonably be read in the way Lindell LLC claims, and so are not unconscionable."  *Id*. at 22.  The Panel thus concluded that "Mr. Zeidman's unconscionability claim is denied."  *Id*. at 23 ¶ 2.

The foregoing reveals that the Panel's denial of this claim was based solely on the Panel's own interpretation of the Rules.  In so ruling, the Panel expressly rejected LMC's position on the Rules and LMC's request to enforce the Rules as written, finding LMC's position on the language of the Rules was unreasonable.

The Eighth Circuit, however, enforced the unambiguous Rules as written, focusing solely on "four corners of the Challenge contract as defined by the Official Rules" and rejecting the consideration or impact of any extrinsic evidence. *Zeidman*, 145 F.4th at 827-28.  The Eighth Circuit's decision comports with LMC's position regarding the Rules, and thus, of necessity, represents a rejection of the Panel's reasoning that the

Rules "cannot reasonably be read" in the manner claimed by LMC.  Indeed, the Eighth

Circuit's enforcement of the Rules is exactly the relief LMC requested of the Panel.

The Eighth Circuit expressly rejected the Panel's interpretation of the Rules,

determining that the Panel's interpretation was "contrary to Minnesota law" and that it

had improperly imposed an extracontractual data requirement despite the fact that

"'packet capture' and 'PCAP data' are not mentioned in the Official Rules."  *Id*. at 827-

28.  The Eighth Circuit further concluded that "'the panel simply imposed its own

conception of sound policy.'"  *Id.* at 828 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l

Corp.*, 559 U.S. 662, 675 (2010)).  However, "[f]air or not, agreed-to contract terms may

not be modified by the panel or by this court."  *Id*.

The Eighth Circuit's enforcement of the Rules, as written, therefore eviscerates

any argument or claim regarding their alleged unconscionability if they are to be

interpreted in the way that LMC argued (and the Eighth Circuit ruled), and, thus, the

Eighth Circuit's decision has eliminated this claim as a matter of law.

## IV.  THE COURT SHOULD DENY ZEIDMAN'S MOTION BECAUSE A REHEARING WOULD BE FUTILE.

The Eighth Circuit decision has rendered any rehearing futile.  *First*, the Eighth

Circuit disposed of the Panel's extracontractual form-of-data requirement.  But Zeidman

offered only evidence regarding the absence of capture packet data to demonstrate that he

had won the Challenge.  That evidence, however, is no longer relevant or admissible

given the Eighth Circuit's rulings, and Zeidman has no other evidence to demonstrate that

he had won the Challenge.

13

*Second*, the Eighth Circuit has barred the consideration of any other extrinsic evidence regarding the Rules and has set forth the controlling interpretation of those Rules. As set forth above, all of Zeidman's claims fail without the benefit of the Panel's imposition of the requirement for capture packet data, and the Eighth Circuit struck that extracontractual requirement.

Based on the foregoing, there is no viable theory on which Zeidman would be able to prevail if the case were remanded for a second arbitration. Any rehearing would thus be futile, providing yet another reason to deny Zeidman's motion.

## CONCLUSION

For the foregoing reasons, LMC asks that the Court:

1. To deny Zeidman's motion for rehearing;

2. To vacate the April 19, 2023, Arbitration Award in its entirety; and

3. To enter final judgment in LMC's favor.

Dated:  April 30, 2026

**BERENS & MILLER, P.A.**

By: s/Barbara Podlucky Berens
Barbara Podlucky Berens (#209788)
3720 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone:  612-349-6171
Email:  bberens@berensmiller.com

*Attorneys for Respondent Lindell Management LLC*

14