**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: Lindell Management LLC Litigation | Case No. 23-cv-1433 (JRT/DJF) |
| Robert Zeidman, <br><br> Petitioner, <br><br> v. <br><br> Lindell Management LLC, <br><br> Respondent. | **ROBERT ZEIDMAN'S REPLY IN FURTHER SUPPORT OF MOTION FOR REHEARING BY THE ARBITRATION PANEL** |

In keeping with the clear language of the contract, that disputes related to the Prove Mike Wrong Challenge be resolved through arbitration, Mr. Zeidman asks the Court to send this case back to the Panel to consider his claims in light of the Eighth Circuit decision and as permitted by §10(b) of the Federal Arbitration Act. *Zeidman v. Lindell Management LLC*, 145 F.4th 820 (8th Cir. 2025) and 9 USC §10(b). Mr. Zeidman's request for rehearing by the arbitration panel ("the Panel") simply seeks to enforce the forum selection clause chosen by Lindell Management LLC ("Lindell"). Having received an unfavorable result from the Panel the first time, Lindell now asks this Court to decide the merits of Mr. Zeidman's claims. But that is not what the parties agreed to in the Prove Mike Wrong Challenge nor what the Eighth Circuit Court of Appeals ordered this Court to do. The Eighth Circuit did not interpret the meaning of "2020 election data." Instead, it reversed the confirmation and remanded the case to this Court to vacate the arbitration award or

"for further proceedings not inconsistent with this opinion." *Zeidman v. Lindell Management LLC*, 145 F.4th at 828.

If the Court does intend to address the merits of Mr. Zeidman's claims, then Mr. Zeidman requests that the parties be allowed to fully brief the issues, rather than have to make those arguments, which are extremely fact intensive, in a motion to enforce a forum selection clause.

### I.     The arbitration clause of the Prove Mike Wrong Challenge should be enforced.

The contract at the center of this case, a document drafted by Lindell, states clearly, and in all capital letters, that any claim, of any sort, related in any way to the Prove Mike Wrong Challenge ("the Challenge") will be "RESOLVED EXCLUSIVELY BY FINAL AND BINDING ARBITRATION." (ECF No. 2-1). The parties unequivocally agreed to submit to binding arbitration any and all claims arising from the contest. *Id*. The Eighth Circuit Court of Appeals agreed that the parties here agreed to arbitrate Mr. Zeidman's claims. *Zeidman*, 145 F.4th at 826 ("Here, substantive arbitrability is not at issue.").  By requesting that this case be sent back for rehearing by the Panel, Mr. Zeidman simply seeks to enforce the forum selection clause chosen by Lindell. Such enforcement of an arbitration clause is favored under the Federal Arbitration Act. Section 2 of the Act declares that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. §

2. Accordingly, Mr. Zeidman asks that his dispute be resolved in arbitration in the manner provided for in the Prove Mike Wrong Challenge rules. Lindell argues that such a request is futile. It is not.

## II. Mr. Zeidman has viable claims that should be resolved by the Panel.

Nothing in the Eighth Circuit's opinion renders Mr. Zeidman's claims futile and they are properly resolved in arbitration.

### A. Mr. Zeidman has a claim for breach of contract.

In the underlying arbitration, Mr. Zeidman brought claims for breach of contract and violation of M.S.A. § 325.F755, the Minnesota Consumer Protection Act ("MCPA"). (ECF No. 24-2). While Lindell seeks to foreclose any further review of the terms of the contract by claiming that the Eighth Circuit has already done that work, such a reading of the Eighth Circuit's decision is erroneous. The Eighth Circuit found that the Panel relied on extrinsic evidence to conclude that the term "2020 election data" meant "PCAP data." *Zeidman*, 145 F.4th at 828. While the Eighth Circuit disagreed with the Panel's method of interpretation of the undefined term "2020 election data," that does not prevent Mr. Zeidman from resubmitting his breach of contract claim to the Panel to consider in light of the Eighth Circuit opinion. Based on the evidence presented at the arbitration, the Panel could find that Mr. Zeidman fulfilled his side of the bargain under an interpretation of "2020

election data" that still comports with the Eighth Circuit's guidance.[1] But such a finding should be made by the Panel, as called for in the contract.

### B. Mr. Zeidman has a claim for violation of the Minnesota Consumer Fraud Act.

Next, the Panel found that because Mr. Zeidman prevailed on his breach of contract claim, his claim under the Minnesota Consumer Fraud Act was moot and they did not address it on the merits. (ECF No. 2-2, p. 22). The Eighth Circuit also confirmed that the Panel did not reach this issue. *Zeidman,* 145 F.4th at 824. Should Mr. Zeidman not prevail on his breach of contract claim, there is still ample evidence in the record that, its advertising to the contrary, Lindell never intended to have a real contest, making the Prove Mike Wrong Challenge a fraud in violation of the MCFA. The arbitration record is replete with examples of ways that Lindell misled the public related to the Prove Mike Wrong Challenge and brought many cyber professionals to South Dakota under false pretenses to take part in a contest that was not a real contest. Again, such a finding requires a review of the record and should be made by the Panel, as called for in the contract.

---

[1] For example, the record contains evidence that Mr. Zeidman tested the relevant data not only for indicia of it being PCAP data but that he also presented evidence that he used every forensic tool at his disposal and showed that the "data" was not related to the election because it was just gibberish contained in a Word file, a spreadsheet unrelated to the election as well as a few other documents that Lindell and its experts disavowed at the arbitration as being among the files containing "2020 election data." Establishing these facts requires review of the record, which underscores the need to send this back to the Panel to consider.

### C. Mr. Zeidman has a claim that the contract was unconscionable.

Finally, Mr. Zeidman has claimed that if Lindell's interpretation of "2020 election data" prevails— that literally any data of any sort from whatever unverifiable source is "2020 election data"— then the contract is unconscionable. In Minnesota, a contract is unconscionable if it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Matter of Est. of Hoffbeck, 415 N.W.2d 447, 449 (Minn. Ct. App. 1987 quoting Hume v. United States*, 132 U.S. 406, 411, 10 S.Ct. 134, 136, 33 L.Ed.2d 393 (1889)). Such would be the nature of the Prove Mike Wrong Contest under Lindell's limitless definition of "2020 election data."

Further, while Mr. Zeidman may not have set forth this claim in his Demand for Arbitration, under Minnesota law, a party can expressly consent to try an issue outside the pleadings, as Lindell did here. Minn. R. Civ. P. 15.02. ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). At the beginning of the arbitration proceedings, before either side presented any evidence, the parties discussed the claims before the Panel, including unconscionability of the contract terms. The parties then presented evidence during the 3-day arbitration. Both sides then addressed the claim of unconscionability

5

extensively in their post-trial briefing and argued it in the closing arguments.[2]  When the Panel addressed unconscionability in its final decision it concluded that "the Contest Rules cannot reasonably be read in the way Lindell LLC claims, and so are not unconscionable." (ECF No. 2-2, p. 22). Were the Panel to find that "2020 election data" is as expansive as Lindell claims, then it could also find that such a definition renders the contract unconscionable. The unconscionability claim was raised by Mr. Zeidman prior to the presentation of evidence at the arbitration, was addressed by both parties in their post-trial briefing and was addressed at closing arguments. It can fairly be said that Lindell expressly consented to try the claim that the Prove Mike Wrong Challenge was unconscionable. The claim of unconscionability should be addressed by the Panel.

### III.    The merits of Mr. Zeidman's claims should be addressed by the Panel, not this Court on a motion for rehearing.

The contract between the parties, drafted by Lindell, should continue to govern the resolution of this dispute and the claims should be addressed by the Panel. Such an outcome is entirely in keeping with the directive of the Eighth Circuit Court of Appeals for further proceedings and the FAA that permits a court, in its discretion, to "direct a rehearing by the arbitrators." 9 USC §10(b).

---

[2] Again, analysis of this issue requires review of the underlying record, which should be left to the Panel.

If the Court does plan to address the merits of Mr. Zeidman's claims, he would ask the Court to provide the parties with the opportunity to fully brief those issues.

DATED: May 7, 2026

<div style="margin-left:40%">

**BAILEY & GLASSER LLP**
*/s/ Cary Joshi*
Brian A. Glasser (admitted *pro hac vice*)
Cary Joshi (admitted *pro hac vice*)
1055 Thomas Jefferson St., Suite 540
Washington, DC 20007
T: (202) 463-2101
F: (202) 463-2103
bglasser@baileyglasser.com
cjoshi@baileyglasser.com

David E. Schlesinger (MN# 0387009)
Schlesinger Kaster, PLLC
900 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
T: 612-688-1400

david@schlesingerkaster.com

*Attorneys for Robert Zeidman*

</div>

7